IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE GENTIVA HEALTH SERVICES, INC., FLSA CASES. | CIVIL ACTION NO. 1:15-mi-55555-WBH |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT**

Plaintiffs submit this Memorandum of Law in support of their Unopposed Motion for Final Approval of Settlement Agreement ("Plaintiffs' Motion for Final Approval"). Plaintiffs request the Court's approval of the Stipulation and Settlement Agreement resolving Plaintiffs' claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201-19, and dismissal of Plaintiffs' claims with prejudice. A copy of the Stipulation and Settlement Agreement is attached hereto as Exhibit 1. A template copy of the Confidential Settlement Agreement and Release of Claims is attached thereto as Exhibit A. Each Authorized Claimant's executed Confidential Settlement Agreement and Release of Claims is identical except for their amounts, and a minor variation in the agreement with Dan Adams, discussed below at Part II.E. Each Authorized Claimant's executed Confidential Settlement Agreement and Release of Claims is being filed in each Plaintiff's Individual Lawsuit.

## I.     FACTUAL BACKGROUND AND LITIGATION HISTORY

### A.     The Nature of the Litigation and Claims Raised

Gentiva Health Services, Inc. ("Gentiva" or "Defendant") provides home healthcare services to patients throughout the United States. To provide such services, Gentiva employs registered nurses, physical therapists, occupation therapists, and other professionals to provide in-home healthcare. Lisa Rindfleisch, Laurie Baker, Tiffany

1

Melendez, and Christina Nelmes worked as clinicians for Gentiva.  They filed a lawsuit asserting claims under, *inter alia*, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.  The gravamen of the *Rindfleisch* action was that Gentiva classified its home healthcare employees as exempt from overtime, but paid them using a "hybrid" compensation model that combined fees and other non-fee payments, which Plaintiffs claim violates the United States Department of Labor's ("DOL's") fee-basis compensation regulations, 29 C.F.R. § 541.605.   The *Rindfleisch* action was conditionally certified, but subsequently decertified, at which point certain former *Rindfleisch* opt-in Plaintiffs re-filed their FLSA claims against Gentiva in a single mass action lawsuit styled *Bailey v. Gentiva Health Services, Inc.*, No. 1:14-cv-01892-MHC (N.D. Ga. 2014).  Except for the first listed plaintiff, Cynthia Bailey, all others were dismissed from that action for misjoinder.  *Bailey*, Dkt. 26 at 17 (Mar. 4, 2015).   Certain former *Rindfleisch* opt-in Plaintiffs then subsequently filed individual lawsuits asserting the same claims as those asserted by the *Rindfleisch* Plaintiffs.   As of the date of the execution of the Parties' Settlement Agreement, 143 of the former *Rindfleisch* opt-in Plaintiffs (i.e., "*In Re Gentiva* Plaintiffs") have pending claims assigned to the Court, and three of the *Rindfleisch* Plaintiffs from the *Rindfleisch* action continue to pursue their claims before the United States Court of Appeals for the Eleventh Circuit.

*Rindfleisch* Plaintiffs and *In Re Gentiva* Plaintiffs seek recovery of alleged unpaid overtime wages and attorneys' fees and costs.

### B.  Procedural History of the Litigation

In 2010, Lisa Rindfleisch, Laurie Baker, Tiffany Melendez, and Christina Nelmes, along with Michelle Gentile, filed a complaint in the U.S. District Court for the Eastern District of New York, raising putative collective action claims under the FLSA and putative class action claims under New York and North Carolina state law.  *Rindfleisch v. Gentiva Health Services, Inc.*, No. 1:10-cv-03288-SCJ (N.D. Ga.), Dkt. No. 1.

On October 8, 2010, Gentiva successfully transferred *Rindfleisch* to the Northern District of Georgia.  *Id.*, Dkt. No. 51.

On April 13, 2011, the court conditionally certified *Rindfleisch* as a collective action under the FLSA.  *Id.*, Dkt. No. 167.  1,115 of the putative collective action members subsequently filed opt-in consent forms to join the *Rindfleisch* action.  The court dismissed the claims brought under New York and North Carolina state law, leaving only claims under the FLSA.  *Id.*, Dkt. Nos. 318 and 488.

The court in *Rindfleisch* bifurcated discovery into two phases, thereby limiting the liability phase of the *Rindfleisch* action to determining whether

3

Gentiva's Pay Per Visit ("PPV") plan is unlawful under the FLSA. Following the close of liability discovery and submission of cross motions for summary judgment on the lawfulness of Gentiva's PPV plan, the court in the *Rindfleisch* action issued a determination on July 26, 2013 that, although Plaintiffs were paid set visit fees, they were not exempt under the fee basis regulations due to non-visit rates Gentiva paid. *Rindfleisch v. Gentiva Health Servs., Inc.*, 962 F. Supp. 2d 1310, 1323 (N.D. Ga. 2013), motion to certify for interlocutory review denied, 1:10-CV-03288-SCJ, 2013 WL 8541675 (N.D. Ga. Nov. 4, 2013).

Although the court in *Rindfleisch* conditionally certified the case as a collective action under the FLSA, the court found that individualized issues predominated, and thus decertified the *Rindfleisch* action on April 18, 2014. *Rindfleisch*, 22 F. Supp. 3d 1295, 1303-04 (N.D. Ga. 2014). Accordingly, the court dismissed without prejudice the then remaining 999 *Rindfleisch* opt-in Plaintiffs, leaving only the FLSA misclassification claims of five named plaintiffs (Lisa Rindfleisch, Laurie Baker, Tiffany Melendez, and Christina Nelmes, and Michelle Gentile). One of the original named plaintiffs, Michelle Gentile, subsequently dismissed her claims with prejudice, leaving only the claims of Lisa Rindfleisch, Laurie Baker, Tiffany Melendez, and Christina Nelmes.

At the close of damages discovery in the *Rindfleisch* action, Gentiva filed a

4

series of motions, arguing that it acted in good faith and not willfully, that *Rindfleisch* Plaintiffs' expert's testimony should be stricken, that any owed overtime should be calculated at the half-time rate, and that it had no liability with respect to the remaining *Rindfleisch* Plaintiffs based on individualized defenses. The court granted Gentiva's motion for partial summary judgment on willfulness and good faith, finding that no reasonable jury could conclude under the circumstances that Defendant acted willfully in violating the FLSA. *Rindfleisch*, No. 1:10-cv-03288-SCJ, Dkt. No. 783. The court also applied a two-year statute of limitations and declined to impose liquidated damages. *Id*. The court also granted Gentiva's motion to strike the expert report and testimony of Dwight Steward, Ph.D., which presented calculations for the *Rindfleisch* Plaintiffs' alleged damages. *Id*., Dkt. No. 784. Shortly thereafter, the court granted Gentiva's motion for summary judgment on the calculation of potential overtime liability, determining that overtime compensation should be calculated at the half-time rate, as opposed to the time-and-a-half calculation. *Id*., Dkt. No. 785. Finally, on February 23, 2016, the court granted Gentiva's motions for summary judgment on the four remaining *Rindfleisch* Plaintiffs' claims and entered judgment in Gentiva's favor. *Id*., Dkt. No. 786. The court entered judgment in favor of Gentiva, explaining that "Plaintiffs take nothing, [and] that [Gentiva] recover its costs of this action from

5

[Named Plaintiffs]." *Id.*, Dkt. No. 787. Gentiva subsequently filed a bill of costs, seeking $180,043.78 in costs, which Plaintiffs disputed. *Id.*, Dkt. Nos. 791, 798, and 814. That request is still pending before the court. *Id.*, Dkt. No. 814.

The *Rindfleisch* Plaintiffs ultimately appealed the court's orders: (1) granting Gentiva's motion for summary judgment as to willfulness, the applicable statute of limitations, and the good faith defense to the imposition of liquidated damages; (2) granting Gentiva's motion to strike the testimony of Dr. Dwight Steward; and (3) granting Gentiva's motion for summary judgment as to Plaintiffs Rindfleisch, Melendez and Baker. Gentiva filed a notice of cross-appeal on March 30, 2016, appealing the court's liability ruling. Oral argument in the *Rindfleisch* appeal was scheduled for Friday, January 27, 2017, but oral arguments were stayed pending the outcome of the Parties' settlement negotiations.

While the *Rindfleisch* action was being litigated, Plaintiffs' filed another lawsuit, in which 411 of the 999 dismissed *Rindfleisch* opt-in Plaintiffs filed a mass action styled *Bailey v. Gentiva Health Services, Inc.*, No. 1:14-cv-01892-MHC (N.D. Ga.). The court granted Gentiva's motion to drop all but the first named Plaintiff for misjoinder. *Id.*, Dkt. No. 26. As a result, the court dismissed all former *Rindfleisch* opt-in Plaintiffs except Plaintiff Cynthia Bailey from the *Bailey* lawsuit without prejudice.

6

Following the court's misjoinder ruling in *Bailey*, 317 former *Rindfleisch* opt-in Plaintiffs filed nearly identical complaints against Gentiva between April 2015 and July 2015, alleging the same FLSA violations as in *Rindfleisch*.  These cases were initially assigned to different Judges in the Northern District of Georgia until on or about October 7, 2015, when all then-active cases were transferred to this Court.  *See In Re Gentiva Health Services, Inc.*, *FLSA Cases*, Civil Action No. 1:15-mi-55555-WBH (N.D. Ga.).  Of the 317 plaintiffs who originally filed individual lawsuits in *In Re Gentiva Health Services, Inc.*, 143 remain. Written discovery was completed by all except one of 143 plaintiffs,[1] and depositions of over twenty plaintiffs were completed, along with corresponding Rule 30(b)(6) depositions.

In short, every issue of these cases have been hotly contested for nearly seven years, and more extensive pre-trial discovery implicating all individual Plaintiffs and the locations where they worked remains to be completed. It seems likely that the disputes will only become more pitched, frequent and pronounced as each individual case moves towards trial if the settlement proposed herein is not approved.

---

[1] Defendant and Plaintiff Harris agreed to stay discovery due to the filing of a motion for summary judgment in her case.

### C.  **Mediation and Settlement**

On May 2, 2016, following a status conference, the Court stayed the *In Re Gentiva* litigation to allow for pre-mediation communications and exchange of information.  During the stay, the Parties exchanged potential exposure models and additional information regarding the remaining claims.  Then, following the submission of confidential position statements to the Parties' neutral third-party mediator, Mr. Hunter Hughes, on October 12, 2016, the Parties engaged in an all-day mediation in Atlanta, Georgia with Mr. Hughes.  As a result of that mediation and subsequent continued negotiations thereafter, the Parties reached a mutually agreeable settlement of the litigation.  On January 10, 2017, the Parties submitted the Stipulation and Settlement Agreement with all relevant documents to the Court for an informal review.  The Court conveyed its preliminary approval, subject to final review with the filing of this Motion.  *In Re Gentiva* Plaintiffs' counsel then sent individual Confidential Settlement Agreements and Release of Claims to each remaining *Rindfleisch* Plaintiff and *In Re Gentiva* Plaintiff for signature.  Now, Plaintiffs present the Stipulation and Settlement Agreement for Court approval. The Plaintiffs who reached a settlement with Gentiva are listed in Exhibit A to the Webber Declaration.

8

## II.   SUMMARY OF SETTLEMENT TERMS

### A.   Monetary Awards

The gross settlement amount totals $3,300,000.   The gross settlement amount is the total and maximum amount Defendant would be required to pay under the Settlement Agreement to completely resolve and settle the claims against Defendant if each Plaintiff were to become an Authorized Claimant, except that in addition to the gross settlement amount, Defendant will pay its share of payroll taxes associated with payments to Authorized Claimants pursuant to the Settlement Agreement that are attributable to back wages.   This includes $602,152.87 that the Parties specifically negotiated first for the aggregate of each of the 143 *In Re Gentiva* Plaintiffs' settlement payments.[2]   Separately, the Parties also negotiated and reached an agreement on an amount of $20,000.01 for the aggregate of the four *Rindfleisch* Plaintiffs' settlement payments.   Finally, the Parties negotiated Plaintiffs' attorneys' fees and expenses, which was reduced to account for $5,570 for Defendant's share of the mediator's fee and $12,574.09 for settlement administration expenses, resulting in an agreement in the amount of $2,659,703.03

---

[2] Of the 143 Plaintiffs, Plaintiff Murphy is the only Plaintiff who did not accept Defendant's settlement offer; thus, the amount allocated to her will revert to Defendant.

for the same.[3]  *See* Agreement, § II(E).  The Settlement Agreement provides that each Plaintiff (or authorized legal representative of such Plaintiff) who executes and submits a timely Confidential Settlement Agreement and Release and a Substitute W-9 form shall be entitled to receive his or her individual settlement payment, subject to Court approval, as set forth on Ex. B to the Settlement Agreement.  *Id.* at § II(A)(1) and (F).  The average award for each FLSA plaintiff is approximately $4,200.

### B.    Eligible Employees

The Settlement Agreement defines the individuals eligible to receive payment under this settlement as:

- Any Plaintiff or authorized legal representative of such Plaintiff who executes a Confidential Settlement Agreement and Release of Claims without amendment or modification and completes a Substitute W-9 Form on or before the Response Date (or, if untimely, otherwise becomes

---

[3] The amount of Plaintiffs' attorney fees and expenses worked out to $18,093.22 per Plaintiff, and the parties agreed that to the extent any Plaintiff did not become an Authorized Claimant, that the amount allocated for their Plaintiffs' attorney fees and expenses would also be deducted from the amount of the payment made for Plaintiffs' attorney fees and expenses.  Thus, because one plaintiff (Colleen Murphy) chose to dismiss her claim with prejudice rather than become an Authorized Claimant, the final amount for Plaintiffs' attorney fees and expenses is $2,641,610.12.

an Authorized Claimant as set forth in Part II.A.2) and becomes entitled to receive a Settlement Payment, subject to Court approval;

- "*Rindfleisch* Plaintiffs" means Lisa Rindfleisch, Tiffany Melendez, Christina Nelmes and Laurie Baker who are or were named plaintiffs in the *Rindfleisch* Litigation.

- "Plaintiffs" means each individual named in Column 1 on Exhibit B to the Settlement Agreement and their past, present, or future agents, heirs, assigns, representatives, and their respective successors and predecessors in interests.

*See* § II(A)(1), (10), (17).

### C.   Release of Claims

Upon approval by the Court, the Settlement Agreement shall bind all Plaintiffs who became Authorized Claimants, to all terms set forth in the Settlement Agreement and the Confidential Settlement Agreement and Release of Claims.  Plaintiffs who are not Authorized Claimants do not release their claims pursuant to the Settlement Agreement.   Plaintiffs who are not Authorized Claimants will not be bound by the Settlement Agreement, described pursuant to the Parties' Settlement Agreement.

### D.    Tax Treatment

In order to allow for the proper tax withholdings from the settlement payments to Authorized Claimants, and to allow for the submission of information returns associated with those payments to the appropriate tax authorities, Plaintiffs participating in the settlement were required to timely submit a substitute IRS Form W-9.  The Parties agreed that each settlement payment to be issued to each Authorized Claimant pursuant to this Settlement Agreement shall be separated into two equal amounts:   50 percent shall be allocated to the claims asserted in the Litigation for allegedly unpaid overtime and other claims for unpaid wages; and 50 percent shall be allocated to the claims asserted in the litigation for liquidated damages and other relief.  The portion of each Settlement Payment allocated to claims of unpaid overtime and other wages will be subject to authorized or required deductions, including employee-paid payroll tax withholdings required by law, garnishments, and tax liens.  However, Defendant will remain responsible for paying the employer's share of all required payroll taxes, and the amount of such taxes is not included in the Gross Settlement Amount.

The portion of each settlement payment allocated to liquidated damages and other relief shall be characterized as non-wage income to the recipient.  The parties also agreed that the settlement administrator will report the portion of the

settlement payment made to each authorized claimant attributable to wages on an I.R.S. Form W-2, and the portion of the settlement payment attributable to non-wages on an I.R.S. Form 1099.  Additionally, authorized claimants will be issued an I.R.S. Form 1099 for their pro rata share of the Plaintiffs' attorney's fees and expenses provided to Plaintiffs' attorneys pursuant to this Settlement Agreement and settlements.  The settlement administrator shall be responsible for issuing a settlement check, less required withholdings and deductions, to each authorized claimant and mailing a settlement check, Form W-2s, and Form 1099s to each such authorized claimant.

### E.      Individual Settlement Payments

All potential settlement payments are to be paid out of the gross settlement amount, and are set forth in Exhibit B to the Settlement Agreement (Ex. 1).  *In Re Gentiva* Plaintiffs' counsel determined a methodology for calculating each individual Plaintiff's calculated alleged[4] damages, which, based on Plaintiffs'

---

[4]Pursuant to the Parties' Stipulation and Settlement Agreement, the Parties agreed that while Plaintiffs would draft and file all documents relating to the final approval of settlement, the parties would have to agree on the language before Plaintiffs' filing of the same.  Thus, in many places in the brief, the language used is not what Plaintiffs would have chosen, and some of the litigation history and arguments in favor of approving the settlement have been omitted.  However, for the sake of finalizing the settlement, Plaintiffs have consented to Defendant's choice of phrase, and omission of certain points.

methodology, totaled over $1 million.[5]   As Gentiva agreed to pay in the aggregate

$602,152.87 for the 143 individual Plaintiffs and $20,000.01 for the four

*Rindfleisch* Plaintiffs, each Plaintiff's potential settlement payment was reduced on

a *pro rata* basis.

Each Plaintiff who is an Authorized Claimant shall be eligible to receive a

settlement payment in the amount indicated in Column 2 on Exhibit B of the

Settlement Agreement.   To the extent that a Plaintiff does not become an

Authorized Claimant or otherwise elects not to accept his or her potential

settlement payment, (i) his or her potential settlement payment will remain the sole

and exclusive property of Defendant; and (ii) *In Re Gentiva* Plaintiffs' counsel

agree that they will move to withdraw from their further representation of any

Plaintiffs who do not dismiss with prejudice their individual lawsuit and who do

not become Authorized Claimants within seven calendar days of an Order Granting

Final Approval of the Settlement Agreement, as set forth in Part II(J)(4) of the

Agreement.   Plaintiffs who are not Authorized Claimants do not release their

claims pursuant to this Settlement Agreement.   Plaintiffs who are not Authorized

Claimants will not be bound by the Settlement Agreement.

---

[5] Defendant expressly denies any and all charges of wrongdoing or liability alleged in the litigations.  Defendant does not agree that Plaintiffs' methodology is appropriate or accurate, and strenuously disputes the amounts Plaintiffs claimed in damages.

All plaintiffs listed in Column 1 of Exhibit B to the Settlement Agreement except one, Plaintiff Colleen Murphy, chose to accept Defendant's settlement offer as presented to them and are considered to be "Authorized Claimants" under the Settlement Agreement.[6]  Plaintiff Colleen Murphy chose not to accept Defendant's settlement offer as presented to her and instead directed Plaintiffs' counsel to dismiss her claim with prejudice assuming the Settlement Agreement is approved by the Court.  Plaintiff Colleen Murphy is not considered an Authorized Claimant for purposes of the Settlement Agreement.   In addition, Plaintiff Dan Adams requested a modification to his Confidential Settlement Agreement and Release of Claims, directing his payment to a non-profit organization, and Defendant agreed with the minor modification to his Confidential Settlement Agreement and Release of Claims.   The amount of Mr. Adams' payment or status as an Authorized Claimant is unaffected by this change.

###   F.   Attorneys' Fees and Litigation Costs

Plaintiffs' attorneys' fees and expenses to be paid to  Plaintiffs' attorneys' as

---

[6] However, based on prior communications with those Plaintiffs, *In Re Gentiva* Plaintiffs' counsel previously represented to Defendant that Plaintiffs Dan Adams and Colleen Murphy, along with all but three others listed in Column 1 on Exhibit B (Plaintiffs Carr, King and Hill) had verbally accepted Defendant's offer and agreed to become an authorized claimant.

set forth in the Settlement Agreement is $2,641,610.12, if the settlement agreement is approved by the Court.  Defendant's payment of Plaintiffs' attorneys' fees and expenses  constitutes full settlement and satisfaction of any and all obligations by Defendant to pay any person, attorney, or law firm (including but not limited to Plaintiffs' Attorneys, as defined in the Settlement Agreement) for attorneys' fees, expenses, or costs, by lien or otherwise, (including but not limited to any fees, costs, and expenses related to any experts and/or consultants and any fees, costs, and expenses associated with mediation and settlement discussions) incurred on behalf of any and all Plaintiffs and each *Rindfleisch* Opt-in Plaintiff in connection with any claims or causes of action to any person for any attorneys' fees, expenses, and costs to which any person did bring or could have brought to date or may claim to be entitled on behalf of any Plaintiffs and all *Rindfleisch* Opt-in Plaintiffs. However, for Cohen, Milstein, Sellers & Toll, PLLC and The Law Offices of Gilda A. Hernandez, PLLC only, this waiver and release does not apply to the *pro rata* share of Plaintiffs' attorneys' fees and expenses for any *In Re Gentiva* Plaintiff who does not become an Authorized Claimant and dismiss his or her individual lawsuit with prejudice.

The amount of the *pro rata* share of Plaintiffs' attorneys' fees and expenses is stated for each Plaintiff in Column 3 to Exhibit B to the Agreement.  As to such

*pro rata* share for any non-settling Plaintiff, it is understood and agreed to by the parties that this amount is the maximum Plaintiffs' attorneys will seek for this litigation through and including the date of any order from the Court denying *In Re Gentiva* Plaintiffs' Counsel's motion to withdraw should such Plaintiff ever become a prevailing party.

Plaintiffs' attorneys' fees and expenses will be apportioned among Plaintiffs' attorneys as set forth in Exhibit C to the Settlement Agreement, or as directed by such counsel, and any disputes regarding the same shall be resolved exclusively between and among Martin & Jones, PLLC; Cohen, Milstein, Sellers & Toll, PLLC; The Law Offices of Gilda A. Hernandez, PLLC; and Barrett & Farahany, LLP, or pursuant to Court order.  Plaintiffs' attorneys' fees and expenses will be paid solely from the Gross Settlement Amount.  In no event shall any award of Plaintiffs' Attorney's Fees and Expenses to Plaintiffs' Attorneys cause Defendant to pay more than the Gross Settlement Amount in full satisfaction of all of its obligations under this Settlement Agreement.

### G.  **Mailing of Settlement Documents**

On January 17, 2017, *In Re Gentiva* Plaintiffs' counsel mailed the Confidential Settlement Agreement and Release of Claims and Substitute W-9

Forms to all but two Plaintiffs.[7]  *See* Webber Decl. Regarding Mailing and Execution of Settlement Agreements ¶ 3.  On January 18, 2017, *In Re Gentiva* Plaintiffs' counsel emailed the same documents to Plaintiffs for their added convenience.  *Id*.  Additionally, *In Re Gentiva* Plaintiffs' counsel communicated with Plaintiffs as necessary to ensure that all relevant settlement documents were returned and submitted to Defendant pursuant to the Settlement Agreement by April 3, 2017.  *Id*.

### 1. Responses to the Settlement Mailing

Plaintiffs had seventy-five (75) calendar days, until April 3, 2017, to postmark an executed Confidential Settlement Agreement and Release of Claims without amendment or modification and completed Substitute W-9 Form to *In Re Gentiva* Plaintiffs' counsel.  *Id*. ¶¶ 3, 5.  As of the response date, 144 became Authorized Claimants, as defined in the Settlement Agreement.  Following the response date, two additional Plaintiffs executed their Confidential Settlement Agreements and Release of Claims, and Defendant agreed to treat such individuals

---

[7] As noted in the Webber Declaration Regarding Mailing and Execution of Settlement Agreements, ¶ 4, two *In Re Gentiva* Plaintiffs who had initially rejected the settlement were sent letters reminding them of the settlement proposal and their initial rejection, and asking if they would reconsider.  Receiving favorable responses, complete settlement packets were then sent to those individuals later in January 2017.

as Authorized Claimants.  As such, in total, 146 of the 147 *Rindfleisch* and *In Re Gentiva* Plaintiffs are Authorized Claimants.

While originally Plaintiffs Debra Carr, Cathy Hill and Bettina King either rejected the Settlement Agreement or were non-responsive, they have since timely accepted and executed the Settlement Agreement and Release of Claims and completed the required tax form.  *Id*. ¶ 4.  However, one other Plaintiff—Colleen Murphy—originally accepted Defendant's settlement offer prior to the execution of the Settlement Agreement but then decided against it thereafter.  As such, Plaintiff Murphy is not an Authorized Claimant for purposes of the Settlement Agreement.  She did, however, agree to dismiss with prejudice her individual lawsuit against Defendant.  Unless Plaintiff Murphy changes her mind and decides to go through with the settlement prior to the seven (7) day period following the Court's order granting final approval of the settlement and Defendant elects to treat Plaintiff Murphy as an Authorized Claimant, *In Re Gentiva* Plaintiffs' counsel will file a stipulation of dismissal of Plaintiff Murphy's claims within seven (7) calendar days of an Order Granting Final Approval of the Settlement Agreement.

## H.    Settlement Claims Administrator

The Parties retained Simpluris, Inc., a neutral third party, to administer the settlement, if approved by the Court.  Courts routinely approve Simpluris as a

19

settlement administrator in cases such as this one. *See, e.g, Selbe v. Peak Campus Mgmt.*, No. 3:14CV3238, Dkt 103 (N.D.CA. Dec. 30, 2015) ("Simpluris appointed as Settlement Administrator" for settlement amount of $800,000 on behalf of 204 class members for unpaid minimum wage); *Meza et al v. S.S. Skikos, Inc.*, No. 3:15CV01889, Dkt. 48 (N.D.C.A. Feb. 24, 2016) ("The Court preliminarily appoints Simpluris Inc., as Settlement Administrator" for settlement amount of $700,000.00 on behalf drivers improperly paid overtime and minimum wages); *Viceral v. Mistras Grp. Inc.*, No. 3:15CV02198-EMC, Dkt. 85 (N.D.C.A. Oct. 19, 2016) ("The Court appoints Simpluris Inc., as Settlement Administrator" for settlement amount of $2,000,000 on behalf of non-exempt technicians, inspectors, and examiners for unpaid minimum and overtime wages).

The Settlement Administrator will perform all of the administrative duties assigned in the Settlement Agreement, including:  (i) establishing and maintaining a Qualified Settlement Fund ("QSF"); (ii) obtaining a taxpayer ID for the QSF and opening a checking account for the settlement fund; (iii) transferring monies from the QSF as necessary; (iv) printing and mailing settlement checks to Plaintiffs who are Authorized Claimants; (v) handling stop payment/reissue check requests; (vi) following up on undeliverable settlement checks; (vii) escheating non-negotiated checks to the appropriate state agency, to the extent required by applicable law;

(viii) calculating and transmitting payment of Defendant's portion of taxes on Settlement Payments to Authorized Claimants, including but not limited to all FICA and FUTA taxes on Settlement Payments to Authorized Claimants; (ix) performing all tax reporting duties and filings required by federal, state, or local law; and (x) transmitting payment of Plaintiffs' Attorneys' Fees and Expenses to Plaintiffs' Counsel.

## III.    STANDARD FOR APPROVAL OF SETTLEMENT AGREEMENT

"There are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982). "These are: (1) 'a 216(c) payment supervised by the Department of Labor' and (2) 'a stipulated judgment entered by a court which has determined that a settlement proposed by an employer and employees, in a suit brought by the employees under the FLSA, is a fair and reasonable [resolution] of a bona fide dispute over FLSA provisions.'" *Dowling v. Athens Ahmed Family Rests., Inc.*, No. 3:08-CV-73(CDL), 2009 WL 1158852, at *3 (M.D. Ga. Apr. 28, 2009) (citing *Lynn's Food Stores*, 679 F.2d at 1355). In short:

> If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute, we allow the district court to

approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Lynn's Food Stores*, 679 F.2d at 1354.

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes.  *See Lynn's Food Stores*, 679 F.2d at 1350, 1353 n.8; *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713(PGG), 2010 WL 2399328, at *6 (S.D.N.Y. Mar. 3, 2010).  Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement.  *Lynn's Food Stores*, 679 F.2d at 1353-54.  If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement.  *Id.* at 1354; *McMahon*, 2010 WL 2399328, at *6.  Because the Settlement Agreement resolves a *bona fide* dispute as to each individual Plaintiff and was reached after vigorous arm's-length settlement negotiations, it should be approved.

Here, for nearly seven years, the parties have exhaustively litigated Plaintiffs' allegations and Defendant's defenses.  The added complexity of coordinating litigation on behalf of over 140 individual plaintiffs has also added to the time required to litigate these matters.

Issues central to both liability and damages were fully briefed on appeal to

22

the Eleventh Circuit, which could have further impacted the litigation.   Neither side believes prevailing in the litigation is a certainty, either at the trial or appellate level.   Thus, taking into account the uncertainty and risks inherent in this litigation, and the cost and time which would be required to pursue the litigation further, the parties have decided that it is desirable and beneficial to settle the litigation in the manner and under the terms set forth in their Settlement Agreement.

The Plaintiffs are recovering over half of the amount of lost wages Plaintiffs' Counsel calculated they could recover under a methodology based on each individual Plaintiff's alleged damages.   Given the risks of further litigation, this is a reasonable compromise over contested issues.   Moreover, it is a compromise reached in arms-length negotiations with the assistance of a skillful, experienced mediator, Hunter Hughes.   Further, each individual Plaintiff whose claims will be compromised has individually consented to the terms of the resolution.

## IV.   ATTORNEYS' FEES SHOULD ALSO BE APPROVED

### A.   The FLSA Provides for a Separate Award of Fees

The FLSA has a fee-shifting provision which provides that reasonable attorneys' fees and costs should be awarded to a prevailing party.   29 U.S.C. § 216(b).   The federal courts have long recognized the importance of the prevailing

23

party's right to recover attorneys' fees under the FLSA.  *See, e.g.*, *Shelton v. Ervin*, 830 F.2d 182, 183 (11th Cir. 1987) (FLSA's fee recovery provision is not collateral to the merits of an FLSA lawsuit but, rather, is an "integral part of the merits" of the lawsuit, and awarding a fee is not discretionary).  A prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."  *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (quoting S. Rep. No. 94-1011, at 4 (1976), 1976 U.S.C.C.A.N. at 5912).  Moreover, courts in this Circuit have emphasized the importance of a settlement agreement containing a specified award of attorneys' fees and expenses so that none of a plaintiff's recovery of lost wages is diverted to pay attorneys' fees or expenses, when the FLSA had contemplated that a separate award of fees and costs would leave the plaintiff in full possession of any wages due under the law.  *Silva v. Miller*, 307 F. App'x 349, 350-51 (11th Cir. 2009); *Siegenthaler v. Kane Furniture Co. of Ormond Reach*, 6:07-CV-173-ORL-22DAB, 2007 WL 1893906, at *3 (M.D. Fla. July 2, 2007) ("Several courts have recognized that Congress intended that a successful FLSA plaintiff would recoup his attorneys' fees and costs from the employer, without incurring any additional obligation to pay fees or costs.").

**B.    Authorized Claimants Are Entitled to Award of Fees Under The Terms of Settlement Agreement**

The Settlement Agreement provides that Authorized Claimants be considered prevailing parties for purposes of the award of attorneys' fees and expenses. *See id*. § II(D). The Supreme Court defined prevailing parties as parties that "succe[ed] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley*, 461 U.S. at 433.   The Supreme Court further explained that, "the touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989); *see also Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health and Human Res.*, 532 U.S. 598, 605 (2001) (the essential test established by the Court requires the plaintiff to achieve a "judicially sanctioned change in the legal relationship of the parties").

The Eleventh Circuit has concluded that even in the absence of a formal consent decree from the court, "if the district court either incorporates the terms of a settlement into its final order of dismissal or expressly retains jurisdiction to enforce a settlement, it may thereafter enforce the terms of the parties' agreement,"

thus establishing a material change to the parties' relationship as required by the Supreme Court. *Am. Disability Ass'n, Inc. v. Chmielarz*, 289 F. 3d 1315, 1320 (11th Cir. 2002). Therefore, a voluntary settlement agreement which results in a final dismissal order or judgment from the court requiring that the parties comply with the voluntary settlement agreement is sufficient to establish prevailing party status. *Id.* Similarly, in *Carnegie*, the parties' proposed settlement agreement sought court approval and requested that the court retain jurisdiction, specifying that the final order had to dismiss the action with prejudice and on the merits in order for the settlement to become effective. *Carnegie v. Mut. Sav. Life Ins. Co.*, No. CV-99S3292NE, 2004 WL 3715446, *26 (N.D. Ala. Nov. 23, 2004). The court concluded that "this clearly satisfies the requirement of judicial approval of the agreement …. Accordingly, the court has no trouble concluding that a material alteration of the legal relationship between the parties will occur with the entry of a final judgment…." *Id*. (internal citations omitted). Here, the Settlement Agreement makes clear that the Parties intend that the Court will grant final approval to the Settlement Agreement and issue a final judgment in the litigation, *see* Agreement, § II(H)(3), and that the Court will retain jurisdiction to enforce the

Agreement, *see id.*, § II(BB).[8]   And the Parties have explicitly agreed that Authorized Claimants will be considered the prevailing plaintiffs for the purpose of a fee petition.   *See id.* § II(D).   Based on the language in the Settlement Agreement, Plaintiffs request that those who are Authorized Claimants be considered prevailing parties for purposes of Plaintiffs' fee request, as the voluntary Settlement Agreement entered into by Plaintiffs and Gentiva contains similar provisions to those in *Carnegie* which were sufficient to establish prevailing party status.[9]

### C.   Lodestar Calculation

The starting point for determining reasonable attorneys' fees is the lodestar—a reasonable hourly rate multiplied by the number of hours reasonably expended on the litigation.   *Hensley*, 461 U.S. at 433.   There is a "strong presumption" that the lodestar reflects a reasonable sum that the attorneys deserve. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565–66 (1986).   Plaintiffs' counsel calculated what they contend is a reasonable

---

[8]  If the Court so desires, Plaintiffs will file a separate fee petition.

[9]  Defendant does not dispute that, in the Settlement Agreement, Authorized Claimants are to be deemed prevailing plaintiffs for purposes of the fee petition but only to the extent that Plaintiffs do not seek an amount that exceeds the agreed upon amount for plaintiffs' attorneys' fees and costs.  Plaintiffs would not have the right to pursue fees and costs at this juncture absent the Settlement Agreement.

lodestar using what they assert are the prevailing market rates and exercising sound billing judgment. That lodestar—$7,756,997.77 in fees plus $547,480.43 in expenses—was then compromised in settlement to a total payment of $2,641,610.12 for fees and costs, a reduction of almost 70%.

### 1.    Reasonable Rates[10]

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). When a case is properly filed in one district court but venue is transferred under the doctrine of *forum non conveniens*, the prevailing rates in the original court's district may be used. *See Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983) ("If the suit had been properly maintainable in the Southern District and transferred for 'the convenience of parties and witnesses, in the interest of justice,' 28 U.S.C. § 1404(a) (1976),

---

[10]  Defendant does not oppose Plaintiffs' request for an award of attorneys' fees and costs in connection with the parties' proposed settlement. However, Defendant does not concede that the hourly rates identified by Plaintiffs' counsel in connection with the request are reasonable. As such, while it agrees with Plaintiffs' counsel's request for an award of attorneys' fees is consistent with the parties' proposed settlement agreement, that should not be construed as a concession by Defendant that the hourly rates presented by Plaintiffs' counsel are appropriate.

counsel would normally be entitled to fees at the rate prevailing in [the original] district."); *Strickland v. Truckers Express, Inc.*, No. CV 95-62-M-JCL, 2007 WL 496368, at *8 (D. Mont. Feb. 12, 2007) ("[D]ue to matters beyond the Plaintiffs' control they were required to prosecute the case in Montana as opposed to their chosen forum.  Under those circumstances the Plaintiffs should not be penalized by a reduction to [their attorney]'s rates.").  Because this suit was transferred from New York to Atlanta at Defendant's request, Plaintiffs maintain that they still are entitled to rates available had the *Rindfleisch* case remained in New York.[11]

In arriving at a proper rate, certain factors may be taken into account to tailor the amount to the particular case, including: the time and labor required; the novelty and difficulty of the issues; the skill needed to properly perform the legal services; the customary fee for similar work in the community; whether the fee is fixed or contingent; the amount involved and the results obtained; the experience, reputation and ability of the attorneys; and awards in similar cases.  *Eason v. Bridgewater & Assocs., Inc.*, 108 F. Supp. 3d 1358, 1364 (N.D. Ga. 2015) (citing *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir.1974)).

---

[11] Plaintiffs acknowledge that Defendant does not agree with Plaintiffs' position on this issue, but Defendant does not oppose Plaintiffs' request for an award of attorneys' fees and costs in connection with the parties' proposed settlement.

Plaintiffs' contend that the billing rates counsel used have been held reasonable in prior cases involving these firms and are consistent with the customary rates for work performed for non-contingency fee clients.  *See* Webber Decl. in Support of Fees at ¶¶ 19-20; *see also* Hernandez Decl. in Support of Fees at ¶¶ 19-21; *see also Cain v. Almeco USA, Inc.*, No. 1:12-CV-3296-TWT, 2014 WL 2158413, at *1 (N.D. Ga. May 23, 2014) (finding rates used by counsel at Barrett & Farahany in FLSA case to be reasonable); *Alger v. Prime Rest. Mgmt., LLC*, No. 1:15-CV-567-WSD, 2016 WL 3741984, at *3 (N.D. Ga. July 13, 2016) (in action asserting claims under Title VII, the ADA, and the FMLA, and in which default judgment was entered, finding counsel rates were reasonable).  Plaintiffs' Counsel, working here on a contingency basis, spent a substantial amount of time and effort litigating the significant, challenging and novel issue of liability in this case, which resulted in the Court in the *Rindfleisch* action issuing a determination that, although the plaintiffs in the *Rindfleisch* action were paid set visit fees, they were not exempt under the fee basis regulations due to the non-visit rates Gentiva paid.  *Rindfleisch v. Gentiva Health Servs., Inc.*, 962 F. Supp. 2d 1310 (N.D. Ga. 2013), motion to certify for interlocutory review denied, 1:10-CV-03288-SCJ, 2013 WL 8541675 (N.D. Ga. Nov. 4, 2013).  Because contingency cases involve risk of no payment for services at all, and because contingency clients are rarely

sources of repeat business, courts have recognized that a fair-market rate for a contingency case is higher than for non-contingency cases. *Norman*, 836 F.2d at 1300, 1305 ("long-standing relationships with business clients may cause the rates to be depressed" so the rate for plaintiffs' attorney should be set based on cases "where the representation is not the product of an ongoing relationship between the attorney and the client"); *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (same).

Given the timing of the negotiations, Plaintiffs calculated their lodestar using 2016 rates, although Plaintiffs contend authority supports the use of current, 2017 rates. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 716 (1987*)* (current market rates of compensation are appropriate to compensate for the delay in payment of fees).

For these reasons, and those set forth in the Webber Declaration in Support of Fees ¶¶ 19-25 and Hernandez Declaration ¶¶ 19-26, Plaintiffs contend the rates used by Plaintiffs in calculating their lodestar should be deemed reasonable.[12]

---

[12] Plaintiffs acknowledge that Defendant does not agree with Plaintiffs' position on this issue, but Defendant does not oppose Plaintiffs' request for an award of attorneys' fees and costs in connection with the parties' proposed settlement.

## 2.    Reasonable Hours[13]

With regards to a reasonable number of hours, attorneys must exercise "billing judgment." *Hensley*, 461 U.S. at 434.   In exercising such judgment, counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id*.   The fee applicant must "maintain[ ] records to show the time spent on the different claims, and set[ ] out with sufficient particularity the general subject matter of the time expenditures so that the district court can assess the time claimed for each activity." *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir.1999).   Further, where multiple claims are brought, and plaintiff prevails on some claims, but does not prevail on other claims, the plaintiff should exclude from the lodestar calculation those hours which are solely attributable to the claim on which plaintiff did not prevail.  *Hensley*, 461 U.S. at 440.

Here, Plaintiffs contend their attorneys have recorded their hours with

---

[13] Defendant does not oppose Plaintiffs' request for an award of attorneys' fees and costs in connection with the parties' proposed settlement.   However, Defendant does not concede that the hours identified by Plaintiffs' counsel in connection with the request are reasonable.   As such, while it agrees with Plaintiffs' counsel's request for an award of attorneys' fees is consistent with the parties' proposed settlement agreement, that should not be construed as a concession by Defendant that the hours presented by Plaintiffs' counsel are appropriate.

sufficient particularity so that the time claimed for each activity may be assessed and have coordinated with their co-counsel to avoid any unnecessary duplication of work. *See* Webber Decl. in Support of Fees at ¶¶ 26-27.

Plaintiffs further contend that the total lodestar for litigating all claims against Gentiva amounted to over $10 million. Webber Fee Decl. ¶ 13; Herndandez Decl ¶ 14. However, Plaintiffs' counsel assert that they excluded from the lodestar calculation any time spent on unsuccessful claims, conducting a line-by-line review of their billing records. Webber Fee Decl. ¶ 14; Hernandez Decl ¶ 19. Thus, as to time worked in *Rindfleisch*, Plaintiffs' counsel excluded time devoted to class certification or decertification because these claims were unsuccessful, all time following decertification, and any other time unrelated to obtaining the court ruling that although the plaintiffs in the *Rindfleisch* action were paid set visit fees, they were not exempt under the fee basis regulations due to the non-visit rates Gentiva paid. *See id.* Plaintiffs' assert that the *Rindfleisch* lodestar included here relates to obtaining that ruling in *Rindfleisch,* which this Court ruled that it would follow if the same issue was raised in the individual Plaintiff

lawsuits.[14]  This totaled $5,206,563.41 in fees and $382,986.17 in costs.  *See In re Tyson Foods FLSA MDL Litig.*, No. 4:07-md-01854-CDL (M.D. Ga.) (attorneys' fees and costs are recoverable for work performed under a different case caption that benefits plaintiffs in the subsequent proceeding); *see also O'Neal v. City of Seattle*, 66 F.3d 1064, 1069 (9th Cir. 1995) (unsuccessful class claims sufficiently related to claims upon which summary judgment was granted in the named plaintiff's favor such that it was reasonable for district court to award fees for work on class certification); *Thomas v. Baca*, No. CV 04-08448 DDP SHX, 2014 WL 7333266, at *2 (C.D. Cal. Dec. 19, 2014) ("Here, Plaintiffs' individual claims … were based on the same core of facts, and premised upon the same legal theories, as those brought on behalf of the class. The unsuccessful class claims were, therefore, related to the claims upon which Plaintiffs did succeed."); *Hatfield v. Oak Hill Banks*, 222 F.Supp.2d 988, 993 (S.D. Ohio 2002) (excluding only claims "that were devoted solely to the pursuit of class claims" and including "any hours that were devoted to the class claims, but were intrinsically connected to the pursuit of the individual claims"); *Marlo v. United Parcel Serv., Inc.*, No. 03-4336,

---

[14] Plaintiffs acknowledge that Defendant does not agree with Plaintiffs' position on this issue, but Defendant does not oppose Plaintiffs' request for an award of attorneys' fees and costs in connection with the parties' proposed settlement.

Dkt. No. 970, at 25 (Aug. 12, 2009), *aff'd* 453 F. App'x 682 (9th Cir. 2011).

Following the *Rindfleisch* Court's decertification of the class, certain former opt-in *Rindfleisch* Plaintiffs pursued their cases individually.   Plaintiffs have calculated their lodestar in the individually-filed cases to be $2,550,434.36 in fees and $164,494.27 in costs.   Webber Fee Decl. ¶ 17; Hernandez Decl. ¶¶ 34-35.

In calculating this amount, Plaintiffs' counsel aver that they carefully reviewed every single billing entry and placed hours worked into various categories.   Webber Fee Decl. ¶ 14; Hernandez Decl. ¶¶ 34-35.  Because of the way the work on behalf of all the individual plaintiffs was coordinated, Plaintiffs' counsel did not separately bill to each individual plaintiff.   *Id.*  For example, one protective order was negotiated, which was then used for each individual case.   *Id.* Thus, in some cases time was excluded entirely, in some cases it was included entirely, and in many cases only a portion of the time was included, where that portion reflected the share of prevailing plaintiffs covered by that additional work. *Id.*  The time sought excludes entirely time spent briefing Defendant's misjoinder motion, on which Plaintiffs were not successful, and time reviewing unsuccessful claims challenged by Gentiva on statute of limitations grounds, and preparing dismissals.   Plaintiffs' counsel included 100% of the time briefing successful claims, such as issue preclusion, as well as time for hearings which would have

35

been held even if for fewer Plaintiffs, and a small amount of discovery time such as negotiating the sharing of documents from the prior *Rindfleisch* case to the benefit of all *In Re Gentiva* Plaintiffs. *Id.* Plaintiffs contend that these tasks would have been required, and would have required the same amount of time, whether completed on behalf of some or all of the *In Re Gentiva* Plaintiffs. *Id.* However, for many activities, the amount of time would have been less had there been only 143 plaintiffs throughout the *In Re Gentiva* litigation. *Id.* In such cases, Plaintiffs' counsel included a percentage of the total in that category, and the percentage is calculated by dividing the 143 *In Re Gentiva* Plaintiffs who remain at the time the Settlement Agreement was executed by the number of *In Re Gentiva* Plaintiffs for whom the work was completed. *Id.* For example, Plaintiffs' counsel filed 317 individual complaints, but only 143 remained at the time the Settlement Agreement was executed, so Plaintiffs' counsel seeks 45.11% of their time related to preparing and filing those individual complaints. *Id.*

Plaintiffs' counsel asserts that they exercised their billing judgment in excluding time worked by individuals who had very limited involvement in the litigation, such as those who filled in briefly when the usual case personnel were unavailable, and any other time counsel did not believe should reasonably be included. All of these reductions were based on a line-by-line, item-by-item

36

review by Plaintiffs' counsel of the time records.

Plaintiffs' counsel's lodestar, adjusted by Plaintiffs' counsel to include only successful claims and using sound billing judgment, was $7,756,997.77 (plus $547,480.43 in expenses). Plaintiffs' counsel's request for $2,641,610.12 reflects a reduction of nearly 70% from the fees and costs counsel would have sought had the request for fees been litigated and submitted to the Court to resolve.[15] Plaintiffs' requests represent $18,093.22 in fees and costs per plaintiff who is an Authorized Claimant, which Plaintiffs' counsel contend is a reasonable amount considering the average settlement payment is $4,200 per plaintiff. *See Cain*, 2014 WL 2158413, at *1 ("[I]t is true that the lodestar amount is more than ten times that of her actual and statutory damages. But that is not remarkable in an individual FLSA case seeking overtime.").

Finally, Plaintiffs' counsel negotiated the potential settlement payments prior to negotiating attorneys' fees, and so there was no conflict of interest between Plaintiffs and their counsel, and the Court need not review the settlement with any

---

[15] Thus, even if the Court determines that any of counsel's rates are high, Plaintiffs aver that this is more than offset by the reduction in fees the parties have agreed to through settlement. Defendant does not oppose Plaintiffs' fee request because it does not exceed the agreed amount for Plaintiffs' attorney's fees and expenses. However, Defendant does not concede that the hours and rates identified by Plaintiffs' counsel in connection with the request are reasonable.

increased scrutiny.  *See Martin v. Huddle House, Inc.*, No. 2:10-CV-0082-WCO, 2011 WL 611625, at *2 (N.D. Ga. Feb. 11, 2011) (potential conflict of interest requiring increased scrutiny only when the parties negotiate damages and fees at the same time); *Moreno v. Regions Bank*, 729 F.Supp.2d 1346, 1347 (M.D.Fla.2010) (finding the fee appeared reasonable when "the parties negotiated [the attorney's fee amount] separately and without regard to the amount paid to the plaintiff.").

## V.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court approve the FLSA settlement, including the separate payment of attorneys' fees and costs.

June 7, 2017

Respectfully submitted,

By:*/s/ Christine E. Webber*
CHRISTINE E. WEBBER

**COHEN MILSTEIN SELLERS &
TOLL PLLC**
Christine E. Webber
Abigail Shafroth
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, DC  20005
(202) 408-4600
cwebber@cohenmilstein.com
ashafroth@cohenmilstein.com

**THE LAW OFFICES OF GILDA
A. HERNANDEZ, PLLC**
Gilda A. Hernandez
315 S. Salem Street, Suite 310
Apex, NC 27502
(919) 741-8693
ghernandez@gildahernandezlaw.com
**BARRETT & FARAHANY, LLP**
Amanda A. Farahany
1100 Peachtree Street, NE
Suite 500
Atlanta, GA 30309
404-214-0120
amanda@bf-llp.com

*Counsel For Plaintiff*

## Font Certification

The undersigned hereby certifies that this pleading complies with the font requirements of LR 5.1B because the document has been prepared in Times New Roman, 14 point.

## Certificate of Service

I hereby certify that on June 7, 2017, I caused the foregoing Memorandum Of Law In Support Of Plaintiffs' "Unopposed Motion For Final Approval Of Settlement Agreement" to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to those registered as CM/ECF participants.

*/s/ Christine E. Webber*

Christine E. Webber