IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE GENTIVA HEALTH SERVICES, INC., FLSA CASES | Case No. 1:15-mi-55555-WBH |

**DECLARATION OF CHRISTINE E. WEBBER IN SUPPORT OF APPROVAL OF SETTLEMENT AND AWARD OF ATTORNEYS' FEES**

1. I am an attorney in good standing, duly licensed and admitted to the Bars of the District of Columbia and the State of Illinois. I was admitted *pro hac vice* to practice in the District of Georgia. I am a member of the law firm of Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein"). The testimony set forth in this Declaration is based on first-hand knowledge, about which I could and would testify competently in open Court if called upon to do so, and on records contemporaneously generated and kept by my Firm in the ordinary course of its law practice, as well as records provided to me by co-counsel who reported they were also contemporaneously generated and kept in the ordinary course of their law practice.

2. I provide this Declaration for the purpose of describing the work completed by my firm in this action, the basis for our rates, and expenses incurred

in the course of this litigation.

<u>Cohen Milstein's work in these cases</u>

3.Cohen Milstein began representing plaintiffs in litigation against Gentiva Health Services, Inc. ("Gentiva" or Defendant") in 2010, filing a class and collective action complaint on May 10, 2010 in the Eastern District of New York. Shortly thereafter, Defendant filed a Motion to Change Venue arguing that the U.S. District Court for the Northern District of Georgia would provide a more convenient forum for the litigation, since, *inter alia*, Gentiva's headquarters had moved from Melville, NY to Atlanta, GA. Defendant's motion was granted.

4.The initial litigation, *Rindfleisch et al. v. Gentiva Health Services, Inc.*, No. 10-3288-SCJ (N.D. Ga.), challenged Gentiva's PPV compensation system on a classwide basis. All Plaintiffs in the pending litigation were members of a conditionally certified collective action that was later decertified. The *Rindfleisch* Court ruled that although the plaintiffs in the *Rindfleisch* Action were paid set visit fees, they were not exempt under the fee basis regulations due to non-visit rates Gentiva paid. *Rindfleisch v. Gentiva Health Servs., Inc.*, 962 F. Supp. 2d 1310, 1323 (N.D. Ga. 2013), motion to certify for interlocutory review denied, 1:10-CV-03288-SCJ, 2013 WL 8541675 (N.D. Ga. Nov. 4, 2013).

5.The *Rindfleisch* Court subsequently decertified the collective action

because individualized issues predominated. *Rindfleisch v. Gentiva Health Servs., Inc.*, 1:10-CV-03288-SCJ, 2014 WL 2002834 (N.D. Ga. Apr. 18, 2014). Subsequently, four named Plaintiffs individually continued with the litigation in *Rindfleisch*. On October 28, 2015, the district court granted Gentiva's motion for summary judgment on the applicable statute of limitations and the good faith defense, finding no reasonable jury could determine Gentiva's violation to be willful. On January 7, 2016, also with respect to the remaining four *Rindfleisch* Plaintiffs, the district court granted Gentiva's motion for summary judgment on the method of calculation of potential overtime liability, finding that the half-time basis sought by Gentiva was appropriate.

6.   On February 23, 2016, the district court granted summary judgment to Gentiva on each of the four *Rindfleisch* Plaintiffs' claims, finding that they did not have sufficient evidence to establish their overtime hours worked, and, as to some of them, that they remained paid on a salaried basis, and thus, were not subject to the PPV practice and misclassified as exempt. Certain *Rindfleisch* Plaintiffs filed a notice of appeal, and Gentiva filed its notice of cross-appeal, challenging the original finding that PPV practice violated the FLSA. Briefing was completed but oral argument was stayed due to the parties settlement posture.

7.   Initially following decertification of *Rindfleisch*, a single complaint

was filed in the Northern District of Georgia on behalf of 411 Plaintiffs. Defendant moved for mis-joinder, and, over Plaintiffs objection that if any action was taken it should be to sever the cases into separate actions, the court dismissed all but Plaintiff Bailey. Separate individual cases were subsequently filed on behalf of 317 former opt-ins, but all were transferred to this Court. Of the 317 plaintiffs who originally filed individual lawsuits in *In Re Gentiva Health Services, Inc.*, 143 remain.

8.     Plaintiffs filed a motion for the application of issue preclusion on the issue determined by Judge Jones in *Rindfleisch* that "the PPV plan," as defined by Judge Jones, violates the FLSA. While Defendant objected to the application of issue preclusion, the Court granted Plaintiffs' motion. *See In Re All of The Gentiva Cases*, No. 1:15-MI-55555, Dkt. 62 (Nov. 24, 2015).

9.     In addition to the common briefing on the applicability of the *Rindfleisch* ruling to the Plaintiffs here, counsel completed Rule 26 reports for each case, negotiated a protective order, and negotiated an agreement to make certain discovery material from *Rindfleisch* available for use by these Plaintiffs. Plaintiffs also submitted initial disclosures for all Plaintiffs except for one who had responded to discovery requests as an opt-in putative class member in *Rindfleisch* and for whom discovery was stayed pending resolution of an individual summary

judgment motion in her individual lawsuit.

10. Plaintiffs responded to document requests and interrogatories on behalf of all but one Plaintiff, as well as serving discovery on Defendant from the same group of Plaintiffs. A detailed deposition plan was established, grouping the plaintiffs into several deposition locations, and depositions were taken of over 20 individual Plaintiffs. Plaintiffs took corresponding Rule 30(b)(6) depositions of Gentiva in various locations throughout the country.

11. Following an April 26, 2016 Court hearing, the parties filed a motion to stay the litigation while the parties conferred on the possibility of mediation. The parties made extensive exchanges of their respective alleged, potential damages calculations over the next few months. After preliminary discussions, the parties engaged in a full day mediation with Hunter Hughes, an experienced mediator. While the case did not resolve at the conclusion of that day, discussions continued through Mr. Hughes and then directly, until the parties were able to reach agreement on January 10, 2017.

12. After the parties reached agreement, Plaintiffs presented the Confidential Settlement Agreement and Release of Claims to each Plaintiff to obtain their signed release and other settlement documents.

<u>Cohen Milstein's Lodestar</u>

13. The total fees and costs of all Plaintiffs' counsel for all work done in both *Rindfleisch* and these follow-on individual actions is over $10 million. Of course, Plaintiffs' counsel do not seek to recover all such time. Plaintiffs seek to recover only the time and expenses related to the claims on which they have been deemed prevailing parties for purposes of settlement only.

14. Thus, as to time worked in *Rindfleisch*, counsel excluded all time devoted to class certification or decertification because these claims were unsuccessful, all time following decertification, and any other time unrelated to the *Rindfleisch* Court's determination that, although the plaintiffs in the *Rindfleisch* action were paid set visit fees, they were not exempt under the fee basis regulations due to the non-visit rates Gentiva paid. Because of the way the work on behalf of all the individual plaintiffs was coordinated, Plaintiffs did not separately record time for each individual plaintiff. For example, one protective order was negotiated, which was then used for each individual case in *In Re Gentiva*. Thus, in some cases time was excluded entirely, in some cases it was included entirely, and in many cases, only a portion of the time was included, where that portion reflected the share of prevailing plaintiffs for purposes of settlement covered by that additional work. The time sought excludes entirely time spent briefing Defendant's successful misjoinder motion and time reviewing unsuccessful claims

challenged by Gentiva on statute of limitations grounds, and preparing dismissals. Counsel included 100% of the time briefing successful claims, such as issue preclusion, as well as hearings which would have been held even if for fewer Plaintiffs, and a small amount of discovery time such as negotiating the sharing of certain documents from the prior *Rindfleisch* case to the benefit of all *In Re Gentiva* Plaintiffs.  Plaintiffs contend that these tasks would have been required, and would have required the same amount of time, whether completed on behalf of some or all of the *In Re Gentiva* Plaintiffs.  However, for many activities, the amount of time would have been less had there been only 143 plaintiffs throughout the *In Re Gentiva* litigation.  In such cases, counsel included a percentage of the total in that category, and the percentage is calculated by dividing the 143 *In Re Gentiva* Plaintiffs who remained at the time the Settlement Agreement was executed by the number of *In Re Gentiva* Plaintiffs for whom the work was completed.  For example, Plaintiffs' counsel filed 317 individual complaints, but only 143 remained at the time the Settlement Agreement was executed, so counsel seeks 45.11% of their time related to preparing and filing those individual complaints.

15.   With respect to both the time originally recorded in *Rindfleisch* and the time first recorded in the follow on litigation (*Bailey v. Gentiva Health*

*Services, Inc.*, No. 1:14-cv-01892-MHC, and *In Re Gentiva Health Services, Inc.*, No. 1:15-mi-55555-WBH), every single billing entry was carefully reviewed by me to determine if it related to a claim on which these 143[1] *In Re Gentiva* plaintiffs prevailed for purposes of settlement or not. The time entries which were retained were also categorized to permit appropriate percentage reductions for time such as complaint drafting which was completed for a larger number of plaintiffs than those settling here.

16. In addition to excluding time that was not related to successful claims for purposes of settlement, time was also reviewed for application of billing judgment. In this fee petition, I have excluded from our request any time I did not believe should be included in an exercise of my billing judgment. All of these reductions were based on a line by line, item by item review of Cohen Milstein's time records, Barrett & Farahany's records, and Martin & Jones' records. I believe, with those reductions, that the remaining time was reasonably and necessarily expended in the prosecution of this action on behalf of Plaintiffs.

17. After the extensive review of all time records as set forth above, the total lodestar Plaintiffs contend would be recoverable is $8,141,293.27 for

---

[1] These calculations were done on the basis of 143 plaintiffs, but the settlement actually encompasses the four *Rindfleisch* plaintiffs as well, and thus the fees Plaintiffs seek provide the sole fee compensation for 147 plaintiffs, not 143.

22,809.56 hours of work.[2]

| Timekeeper | Position | Rate | Hours | Lodestar |
|---|---|---|---|---|
| *Rindfleisch* time from Cohen Milstein | | | | |
| Sellers, Joseph | Partner | $885 | 6.1 | $5,398.50 |
| Richards, John | Partner | $885 | 1 | $885.00 |
| Webber, Christine E. | Partner | $765 | 1142.5 | $874,012.50 |
| Shafroth, Abigail E. | Associate | $480 | 2383 | $1,143,840.00 |
| Green Coleman, Llezlie | Associate | $440 | 5.4 | $2,376.00 |
| Aniskevich, Elizabeth | Law Clerk | $280 | 29 | $6,815.00 |
| Davidson, Stephanie | Law Clerk | $280 | 11.9 | $2,856.00 |
| Lam, Tiffany | Paralegal | $270 | 291.1 | $78,597.00 |
| Scherman, Christopher | Paralegal | $270 | 2060.7 | $556,389.00 |
| Rama, Imelda | Paralegal | $260 | 1138.7 | $296,062.00 |
| Black, Peter | Paralegal | $270 | 4.3 | $1,161.00 |
| Clark, Cameron | Paralegal | $270 | 2.8 | $756.00 |
| Conway, Charles | Paralegal | $270 | 19.5 | $5,265.00 |
| Greenberg, David | Paralegal | $270 | 12.5 | $3,375.00 |
| McBride, Michael | Paralegal | $270 | 69.5 | $18,765.00 |
| Fiore-Walker, Kari | Paralegal | $270 | 39.6 | $10,692.00 |
| Macker, Pamela | Paralegal | $270 | 2 | $540.00 |
| Barevadia, Zarna | E-discovery | $275 | 8.3 | $2,282.50 |
| Dvornichenko, Lily | E-discovery | $250 | 0.8 | $200.00 |
| **CMST *Rindfleisch* Subtotal** | | | **7228.7** | **$3,010,267.50** |
| Individual case time from Cohen Milstein | | | | |
| Sellers, Joseph | Partner | $885 | 1.30 | $526.24 |
| Webber, Christine E. | Partner | $765 | 891.75 | $582,878.92 |
| Shafroth, Abigail E. | Associate | $480 | 30.50 | $4,721.78 |
| Corman, Brian | Associate | $405 | 560.20 | $221,715.80 |
| Schwarcz, Aniko | Attorney | $335 | 1.30 | $153.64 |
| Roulhac, Adrienne | Attorney | $435 | 865.40 | $321,073.35 |

---

[2] I performed a line by line review not only of Cohen Milstein's billing records for this purpose, but also the records of Martin & Jones, counsel in *Rindfleisch*, and Barrett & Farahany, LLP, counsel in the pending actions. Gilda Hernandez reviewed her time records in the same way, as set forth in her separate declaration.

| | | | | |
|---|---|---|---|---|
| Liu, Cara | Attorney | $350 | 493.50 | $163,375.32 |
| Press, Daniel | Attorney | $280 | 376.80 | $101,397.56 |
| Lam, Tiffany | Paralegal | $260 | 117.60 | $8,204.35 |
| Scherman, Christopher | Paralegal | $270 | 2,457.70 | $467,034.84 |
| Macker, Pamela | Paralegal | $270 | 17.40 | $4,535.16 |
| Tablan, Alexander | Paralegal | $270 | 108.40 | $26,571.22 |
| Jackson, Matthew | Paralegal | $270 | 177.40 | $14,212.95 |
| McLaughlin, Victoria | Paralegal | $250 | 44.80 | $2,188.22 |
| **CMST Individual case Subtotal** | | | **6,144.05** | **$1,918,589.36** |
| | | | | |
| Barrett & Farahany Individual case time | | | | |
| Farahany, Amanda | Partner | $450 | 77.4 | $34,830 |
| Petmecky, Linda | Paralegal | $125 | 198.5 | $24,813.75 |
| Schmitt, Marilyn | Paralegal | $125 | 0.1 | $12.50 |
| Howe, Diana | Paralegal | $125 | 2.4 | $300 |
| **B&F Subtotal** | | | **278.4** | **$52,477.84** |
| | | | | |
| Martin & Jones *Rindfleisch* time | | | | |
| Horne, Forest | Partner | $695 | 741.55 | $502,911.01 |
| Olson, Chris | Partner | $625 | 87.6 | $48,967.50 |
| Hernandez, Jill | Associate | $595 | 1730 | $1,079,350.90 |
| Wood, Walter | Associate | $495 | 129.75 | $64,226.25 |
| Ataturk, Burcu | Paralegal | $100 | 108.56 | $10,856 |
| Griffin, Caitlin | Paralegal | $150 | 451.7 | $67,755 |
| Mancino, Harmony | Paralegal | $100 | 79.05 | $7,905 |
| Morauer, Leigh | Paralegal | $150 | 1264.3 | $191,231.25 |
| Pyatt, Sherrell | Paralegal | $150 | 7.5 | $1,125 |
| **M&J Subtotal** | | | **4600.01** | **$1,974,327.91** |

Cohen Milstein's rates

18.   The lodestar calculation is made based upon Cohen Milstein's 2016 billing rates, rather than its current rates. These rates are consistent with the usual and customary hourly rates for the Cohen Milstein's work performed for non-

contingency fee clients in 2016.

19. Cohen Milstein's hourly rates have been paid by hourly clients and, separately, approved for payment by federal and state courts in other litigation. *Chesemore v. All. Holdings, Inc.*, No. 09-CV-413-WMC, 2014 WL 4415919, at *6 (W.D. Wis. Sept. 5, 2014), *aff'd sub nom. Chesemore v. Fenkell*, 829 F.3d 803 (7th Cir. 2016) (finding rates ranging between $395 for lower-level associates to $895 for high-level partners were "on par with market rates charged by other plaintiffs' firms handling ERISA breach of fiduciary cases"); *Dooley v. Saxton*, No. 1:12-cv-01207-MC, ECF No. 187 (D. Or. Oct. 19, 2015) (approving unopposed motion for final approval of ERISA class action settlement and request for fees including lodestar cross check based on rates presented in the unopposed motion ranging from $375 to $790 per hour); *Slipchenko v. Brunel Energy, Inc.*, No. CIV.A. H-11-1465, 2015 WL 338358, at *19 (S.D. Tex. Jan. 23, 2015) (approving class counsel's unopposed motion for approval of attorneys' fees in COBRA and ARRA class action, finding lodestar analysis supported request for fees, which were based on "$240–$260 for paralegals, $415–$530 for associates, and $635–$775 for partners"); *Parker v. Dish Network, L.L.C.*, No. 4:11-cv-1457, ECF No. 63 (N.D. Cal. Feb. 13, 2012), granted, ECF No. 87 (Apr. 17, 2012) (granting plaintiffs' unopposed motion for an award of attorney fees, expenses in a contract

case, premised on $530 to $710 for CMST partners and $350 for CMST associates); *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 260 (E.D. Va. 2009) (approving CMST's request for fees, based on lodestar cross check, with rates ranging from $440 to $775 for partners and $295 to $525 for associates in class action alleging accounting fraud in violation of federal securities laws); *Tuten v. United Airlines, Inc.*, No. 12-cv-1561-WJM-MEH, 2014 WL 2057769, at *4 (D. Colo. May 19, 2014) (granting unopposed motion for attorneys' fees in USERRA action with lodestar cross-check based on the number of hours class counsel reported working, and their estimate that the number of hours ultimately expended will result in a lodestar multiplier at or below 2, where the lodestar was calculated by counsel based on Cohen Milstein's 2013 standard rates.).  Finally, in *In re Beacon Assocs. Litig.*, No. 09 CIV. 3907 CM, 2013 WL 2450960, at *15 (S.D.N.Y. May 9, 2013), Cohen Milstein's rates were approved as part of lodestar crosscheck of a common fund award. In *Tomkins v. Amedisys*, (D. Conn. 2016), Cohen Milstein presented rates, including my rate, as part of a lodestar cross check for a common fund award, in an unopposed motion that was ultimately approved by the court.

  <u>Additional support for Cohen Milstein's rates</u>

  20. I graduated from Harvard University with a B.A. in Government

(*magna cum laude*, 1988) and the University of Michigan Law School (J.D., *magna cum laude*, 1991, Order of the Coif). Following law school, I clerked for the Honorable Hubert L. Will, United States District Judge for the Northern District of Illinois. I received a Women's Law and Public Policy fellowship for 1993-94 which was the start of my four years at the Washington Lawyers' Committee for Civil Rights and Urban Affairs in their Equal Employment Opportunity Project. I joined Cohen Milstein in 1997 and am a partner with the firm.

21. My legal practice since 1993 has consisted almost exclusively of representing plaintiffs in employment and civil rights class actions, including employment discrimination and wage and hour cases. In particular, I served as lead counsel in *In re Tyson Foods FLSA MDL*, (No. 07-md-1854, M.D. Ga.), a settled collective action involving FLSA claims of 17,000 workers at over 40 Tyson chicken processing plants. I am also counsel to the plaintiff class in *Keepseagle v. Vilsack*, where we obtained a $760 million settlement on behalf of Native American farmers and ranchers who were denied loans or loan servicing by the USDA. I was part of the team recognized by Public Justice as finalists for their Trial Lawyer of the Year award in 2011 for the work done in *Keepseagle*.

22. Abby Shafroth joined Cohen Milstein as an Associate in 2010 and

was a member of the firm until summer 2015.  Ms. Shafroth graduated from Harvard College with an A.B. in Psychology (*cum Laude*, 2004) and Harvard Law School (*cum laude*, 2008).  Following law school, Ms. Shafroth served as a law clerk for the Honorable Richard A. Paez of the United States Court of Appeals for the Ninth Circuit.  She then was a fellow and associate counsel for the Lawyers' Committee for Civil Rights Under Law in the Fair Housing and Employment Discrimination Projects, where she litigated complex civil rights cases challenging exclusionary zoning and employment discrimination.

23. Brian Corman, an Associate at Cohen Milstein, graduated from Columbia University with a B.A. in Political Science (*summa cum laude*, Phi Beta Kappa, 2010) and the University of California, Berkeley School of Law (J.D., 2013).  Following law school, Mr. Corman clerked for the Honorable Harry Pregerson of the United States Court of Appeals for the Ninth Circuit.  Mr. Corman then worked as a D.C. Bar Fellow at the Lawyers' Committee for Civil Rights Under Law, as well as at a top-tier defendants' firm in Washington, D.C.  He joined Cohen Milstein in 2015, and has since litigated a number of employment and civil rights cases.

24. Cara Patton Liu graduated from the University of Wisconsin in 2003 and received her JD from Lewis & Clark Law School in 2006.  Following law

school, Ms. Liu practiced in California for over eight years, focusing on employment and commercial litigation. She worked with Plaintiffs' counsel in 2016 when discovery was especially time consuming.

25.   Daniel Press graduated from Washington University in St. Louis in 2007 and received his JD from University of Kansas School of Law in 2011. Following three years practicing employment law in Kansas, Mr. Press began working with Cohen Milstein in early 2015, and began working on this litigation in early 2016.

26.   A copy of our firm resume is attached to this declaration as Ex. A, which includes the background, relevant qualification and experience of other counsel from Cohen Milstein who participated in this case.

27.   There is additional work that was completed after the lodestar calculations set forth above – largely related to preparing the motion for approval of the settlement – and additional work that will be required going forward that is of course not included in the lodestar reported above.  In addition to attending any hearings for approval of the settlement, we will be involved in supervising the work of the settlement administrator and responding to further questions from Plaintiffs in connection with the settlement.  Thus, additional lodestar will accrue which will be compensated by the fee award in these cases.

28.    Cohen Milstein's and all counsel's compensation for the services rendered in these cases and reimbursement of expenses have been and are wholly contingent on the outcomes.

<u>Cohen Milstein's timekeeping</u>

29.    Throughout this proceeding, Cohen Milstein has endeavored to represent the interests of the plaintiffs in the fullest and most efficient way possible.  The time summarized in this Declaration was actually expended, in the exercise of professional judgment, by me and the partners, associates, and paralegals from Cohen Milstein involved.  Cohen Milstein has avoided any unnecessary duplication of effort by coordinating carefully with co-counsel.  The time for which Cohen Milstein claims compensation is described in paragraphs 3-17 and was reasonably and necessarily expended.  The detailed daily time summaries, with some redactions to protect protected work product and attorney-client privilege, or any other information the Court requests, is available for *in camera* review should the Court desire.

30.    Throughout the time we worked on this matter, Cohen Milstein's timekeepers have been required to keep daily time-records, providing both amounts of time spent on discrete tasks and descriptions of that work.  These records are entered into a computer database, checked, and maintained in

computer-readable format.

31.   Cohen Milstein's lodestar, based upon the rates identified above and time expended, after the deductions set forth above, is $4,928,856.86.

32.   Cohen Milstein's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expenses items.  Expense items are billed separately and such charges are not duplicated in my firm's billing rates. Paragraph 34 contains a summary of the costs reasonably incurred by Cohen Milstein and co-counsel during the same time period.

33.   As detailed in paragraph 34, Cohen Milstein has incurred a total of $264,222.08 in expenses in connection with the prosecution of this litigation.  The expenses incurred were reasonable and necessary under the circumstances of this litigation.  The expenses incurred in these actions are reflected on the books and records of Cohen Milstein.  These books and records are prepared from invoices, expense vouchers, and other source materials and are an accurate record of the expenses incurred.  The underlying invoices and receipts are available for inspection if the Court requests.  As with time entries, we excluded expenses which related to unsuccessful claims.

34.   The expenses incurred by Cohen Milstein can be divided into the following categories:

*Rindfleisch* Costs – portion included

| Category | Cost |
|---|---:|
| In-House Duplicating | $1,622.09 |
| In-House Color Copies | $1.49 |
| Outside Duplicating | $738.55 |
| Long Distance Telephone (internal) | $456.18 |
| Long Distance Telephone (3rd party) | $680.57 |
| Postage | $693.95 |
| Local Courier | $110.92 |
| Air Courier | $3,435.29 |
| Complaint Filing Fee | $350.00 |
| Other Court Fees | $134.00 |
| Court Reporter Fees | $25,553.92 |
| Lexis | $4,907.22 |
| Westlaw and Pacer | $6,399.89 |
| Travel - Transportation | $24,398.00 |
| Travel - Hotel | $8,642.10 |
| Travel – Taxis, Tips | $2,842.89 |
| Travel - Meals | $2,563.30 |
| Travel – Long Distance Telephone | $96.06 |
| Travel - Miscellaneous | $104.60 |
| Travel – Parking Charges | $276.05 |
| Local Transportation | $16.00 |
| webhosted doc repository | $22,050.66 |
| Witness Statutory Fees & mileage | $111.39 |
| Overtime Transportation | $127.39 |
| Overtime Meals | $210.63 |
| Business Meals | $21.01 |
| **TOTAL** | **$106,544.15** |

Individual Case Costs

| Category | Cost |
|---|---:|
| In-House Duplicating | $516.52 |

18

| | |
|---|---:|
| In-House Color Copies | $24.31 |
| Outside Duplicating | $10,773.12 |
| Long Distance Telephone (internal) | $47.26 |
| Long Distance Telephone (3rd party) | $43.03 |
| Postage | $624.49 |
| Air Courier | $2,616.19 |
| Complaint Filing Fee | $57,600.00 |
| Other Court Fees | $900.00 |
| Court Reporter Fees | $20,089.83 |
| Lexis | $1,111.69 |
| Westlaw and Pacer | $2,015.60 |
| Travel - Transportation | $17,363.13 |
| Travel - Hotel | $10,637.26 |
| Travel – Taxis, Tips | $1,286.75 |
| Travel - Meals | $2,406.13 |
| Travel – Long Distance Telephone | $117.66 |
| Travel - Miscellaneous | $3.45 |
| Travel – Parking Charges | $112.95 |
| Professional Services | $6,178.56 |
| webhosted doc repository | $23,151.31 |
| Overtime Meals | $58.69 |
| **TOTAL** | **$157,677.93** |

I declare under penalty of perjury under the laws of the District of Columbia and the State of Georgia that the foregoing is true and correct to the best of my knowledge.

June 7, 2017               */s/Christine E. Webber*
                           Christine E. Webber